Orange County is going to attempt to convince this court, and make this court truly believe, that parents discharging in bankruptcy, debts imposed upon them for their child's involuntary income, will not be compensated for in the future. Bankruptcy and incarceration was such a big problem, that as part of the BAP CPA amendments of 2005, Congress specifically amended the Bankruptcy Code to make certain that these types of debts are non-dischargeable in bankruptcy. For numerous reasons, the statute can't be interpreted in that manner, and by this appeal, Ms. Rivera is not asking this court to make a radical decision. She's simply asking this court to interpret the new Bankruptcy Code statutes in a reasoned manner, so as to rule consistently with the pre-2005 case law, holding these exact types of debts non-dischargeable, and reaffirm that the BAP CPA amendments of 2005 did not make, and in reality did not intend to make, the type of debt imposed upon Ms. Rivera here, non-dischargeable in bankruptcy. But before we get into the weeds on the exact statutory language and parsing the provisions of the statute, it's important to take a step back, and to understand what the purpose, and what the goal, and what the role domestic support obligations play in a bankruptcy case. Well, it's simple, and it's very straightforward. It's to protect spouses and children from being without support. It's to ensure that deadbeat parents and former spouses can't simply file a bankruptcy case to walk away from those types of obligations that stem from court-ordered support obligations, spousal support, child support, that arose in the context of a family law proceeding, like a dissolution of marriage, and ultimately the very unfortunate breakup of a family. In fact, the Platter case from the Seventh Circuit, which is cited in the brief, very eloquently states what the purpose of domestic support obligations play in a bankruptcy case. I'm quoting, the unquestionable purpose of Section 523A5 is to ensure that spouses, former spouses, and children receive support even though a support provider has declared bankruptcy. So against that backdrop, and understanding now what the overall purpose, goal, and role that domestic support obligations play in a bankruptcy case, a natural question arises. Why is the government even involved? What role does the government play with respect to non-dischargeable domestic support obligations in bankruptcy? Well, they actually play a pretty critical role, but it's a very narrow one. Traditionally, the government has been taking assignment of those court-ordered support obligations, spousal support orders, child support orders, and gone out by virtue of being the assinee and collected that debt on behalf of the custodial parents and the children to whom that debt is entitled. This makes sense. The government's in a much better position to do that. They have a lot more resources. They have a lot more tools at their disposal. And unfortunately, as is the nature of the game, a custodial parent and a child who is in desperate need of that support is probably of usually limited means to go out and collect that debt themselves. So the government steps in, takes assignment of the debt, and goes and does that job for them. And there's a strong policy behind that. So this policy is so strong, actually, that Platter, the Seventh Circuit decision that I mentioned before, outlines this assignment mechanism in great detail and actually said that Congress amended the Bankruptcy Code way back when in direct response to a split of authority on whether those debts that were assigned to a government entity should be non-dischargeable in a bankruptcy case. And indeed, they are. But Orange County wants to now take this traditional framework and significantly expand that framework to now encompass essentially all debts, not just assigned debts, all debts that are owed to the government that even come within the broad realm of support obligations and make those non-dischargeable obligations. And in doing so, they are attempting to expand that framework to include the exact types of debts at issue here, the debts imposed upon Ms. Rivera by virtue of her child's involuntary incarceration in an Orange County juvenile facility, which this expansion is unwarranted. Those debts have always been dischargeable. So as we turn to the language of the statute itself, Orange County's one and only argument is the plain languages of the statute, and by statutes I mean 523A-5 and 101-14A, dictate the result that it's seeking, in that these costs of incarceration on a facial reading of the statute deem those debts non-dischargeable. Now, Ms. Rivera acknowledges that an isolated facial reading of 101-14A, which defines domestic support obligation, on its face does seem to support Orange County's position. So from a very high level, Orange County's position makes sense. But in addition to the policy arguments that Ms. Rivera has outlined in her brief, the language of the statute isn't as plain as Orange County would want this Court to believe. Why? There are several issues. First is the issue of support. In the statute, to be a non-dischargeable domestic support obligation, the debt has to be in the nature of support. Well, Orange County wants this Court to believe that support now encompasses any money, regardless of what the true nature and character of that money is, wants it to be dischargeable. These types of debts that are at issue here are not within the traditional realm of support obligations, because they didn't arise from a family law context. They're not a spousal or child support order. For more perspective, as is well established, we always look to the underlying state law to get a feel, in a bankruptcy case, what the true nature and character of a debt is. This debt here was statutorily created by the California Welfare and Institutions Code. Why? For the specific purpose of protecting the fiscal integrity of the county, or actually of state government as a whole. So what's wrong with that? There's nothing wrong with protecting the fiscal integrity. Well, you seem so indignant about it. Your Honor, if I could backtrack from being so indignant. You were emphatic, let's say, in a nice way. Thank you. Protecting the fiscal integrity of a state government or a government entity is perfectly fine, but it's its application to being a domestic support obligation and whether that obligation is nondischargeable in a bankruptcy case. The fallacy of Orange County's argument lies in the essence of protecting the fiscal integrity of the county itself. The California Welfare and Institutions Code itself provides that if the parent of the incarcerated minor doesn't have the ability to pay, Orange County will waive the cost. Where do you adjudicate that? So as I understand, there's a default judgment assessing a certain amount of money, and that's another issue. Calculation of what actually could be hypothetically owed is in question. But why are we here on sanctions for violating the bankruptcy injunction instead of, say, going to reopen the default judgment or going to state court and saying under Section 903 she doesn't have the ability to pay, and she was bankrupt and she can't pay this? So the procedural posture of this case and the reason why we're here in the context of a sanctions motion is because domestic support obligations are automatically nondischargeable notwithstanding the bankruptcy case, meaning unlike other debts that are determined nondischargeable in a bankruptcy case, you don't have to file a lawsuit, an adversary proceeding in the bankruptcy court to affirmatively deem that debt nondischargeable. It's nondischargeable by operation of the bankruptcy code itself. So then what you're saying, you agree that that's the case, but you're saying that's not what this particular debt is. Correct. And so the reason why we're here in a sanctions context is because Orange County pursued collection of this debt post Ms. Rivera's discharge, after Ms. Rivera received her discharge, and Ms. Rivera contends that this debt is not a nondischargeable domestic support obligation, thus it was discharged as any other general unsecured debt would be in the bankruptcy case because Orange County sought to collect what Ms. Rivera thought and what we contend the law says is a dischargeable debt, Orange County would be liable for a violation of the discharge injunction in the bankruptcy case. And so the issue arose because the trial court, the bankruptcy court, said we have to make a determination on whether or not this debt constitutes a nondischargeable domestic support obligation because if it does, then Orange County could not have violated the discharge injunction because a nondischargeable debt may be collected even after the discharge. Could you go back to your statement that if the person doesn't have the money, Orange County waives it? Correct. There is a statutory procedure under the California Welfare and Institutions Code where the debts that are at issue here are only imposed upon those parents with the ability to pay. So Orange County will conduct essentially a financial hearing on whether or not the parent has the ability to pay the debt. Here we contend, and as we put in our briefs, that the virtue of filing a bankruptcy case is of itself a clear indicator  But when would the hearing take place? I understand you say you shouldn't have to have a hearing because the debt is discharged in bankruptcy. But has there been a hearing or has there been a request for a hearing or are you able to request a hearing? Your Honor, I do not know the full extent of how long a duration you have a time to request a hearing. It is my understanding that Ms. Rivera, hearings were scheduled and for various reasons Ms. Rivera was unable to attend a hearing and the county rendered a judgment or rendered the decision that she did have the ability to pay because for her failure to appear to the financial hearing. That was the entry of the default judgment. That's why there's a default judgment against her. That's my understanding. And is that where she could have raised the defense of she didn't have the ability to pay? She could have in a financial hearing, yes. Is that waived by the default judgment? We're not representing her in the state court capacity, but we would argue now that there is a future ability to revisit whether Ms. Rivera has the ability to pay those costs. If that were revisited and it were determined that she doesn't have the ability, that would move this case? No. Why not? The federal bankruptcy court has the final ability to determine what types of debts are non-dischargeable in a bankruptcy case. But if there were no debt? If she got rid of the debt because the state determined in its hearing that she didn't have the ability to pay, then there would be no debt at all. It would be a question of whether Orange County was waiving its claim in its entirety or whether they could still assert a claim and assert that it was a non-dischargeable debt even though they wouldn't pursue collecting that debt against Ms. Rivera. It does seem there must be a practical problem here unless you're both just trying to establish legal principles. As far as Ms. Rivera is concerned, and I understand you're doing it pro bono, but as far as Ms. Rivera is concerned, I would guess she doesn't have the money, and I would guess that whatever the reason she didn't show up and there was a default and all of that, we wouldn't be here over this $9,000 if we just were trying to solve the problem of whether Orange County is really determined to go after Ms. Rivera. I would agree with that, Your Honor. This is a case that stands on a legal principle on whether or not, and the reason why we're pursuing this is to get a determination on whether or not these costs of incarceration are, by law, non-dischargeable domestic support obligations in a bankruptcy case. I would like to reserve a little time for rebuttal. I'm running short on time. All right. We'll give you a few minutes. Thank you. Good morning, Your Honors. My name is Adam Clanton, Deputy County Counsel, on behalf of the Orange County Probation Department. I want to ask you, aside from the fact that you happen to have three wonderful judges here to decide an abstract legal question, is there any reason you really want to pursue Ms. Rivera to get this money? Well, I mean, turning originally to your question about the posture in state law. Oops, sorry. When the saints come marching in. I don't know how to operate these things. All right. There was a determination by the state court in July of 2011 that Ms. Rivera did a financial hearing in which the court determined she had the ability to pay, at least found that she was responsible for the debt. But she didn't appear or contest that, right? There were seven notices sent to her by order of the court preceding that hearing, ordering her to meet with the Orange County Probation Department to discuss her financial situation, and she did not appear for any of those seven instances. And then the matter proceeded before the juvenile court judge, the Superior Court, and that hearing, and that was noticed as well, and she did not appear for that hearing. And there was a judicial order that she be responsible for those funds. So that stands. And that was prior to her declaration. This is what I don't understand, though. Okay. The county said that the cost of taking care of her son was $16,372. She paid $9,508. That left $6,864. And Vincente, the child's father, paid $3,336, which leaves a total owing $3,528. But the court entered a default judgment for $9,905. Can you explain that? My understanding is at the time that the – and I'm trying to parse that out myself, but at the time that some of those things had not yet been paid. Well, I mean, are you here trying to get $9,905 or you're down to $3,528 because it's pretty much a waste of our time over that amount? My understanding from probation is the numbers are slightly different. Do you charge interest? There is no interest charge. So what is it? The numbers I've been given as of today were $6,434. Of that, $5,736 relates to the institutional care and $698 relates to legal fees. So you have a different total. So you don't have $9,905 now. What's the total amount you're seeking? $6,434 is the total remainder. How's that? That's not consistent. So did Vincente pay or not pay? My understanding actually is that he, too, has filed for bankruptcy and has paid only a portion or at least stopped paying. What is the county going after these people that have filed for bankruptcy and can't pay this? Well, we have this situation where there is judicial order saying that they are responsible for this amount. And under 101-14-A. But you can see that that's wrong because you don't even allege today that they're responsible for the amount in the default judgment. Not the full amount because some has been paid subsequent to the judgment. So of the remaining amount, the amount that is owed is $6,434. Now, if I may, I would like to start out with the proposition that this was brought as a motion for sanctions. Now, the bankruptcy court determined in part that regardless of any interpretation of Section 523-A.5, and while I believe that the county's interpretation was correct, a reasonable interpretation is one adopted by the county, and that, therefore, regardless of any interpretation of the law, the county's position was not unreasonable and is, therefore, not subject to contempt or sanctionability. And that decision has not actually been appealed before this Court. It was a motion for sanctions that was denied on the basis that the county should not be held in contempt. So that still stands. And in addition, I would add that, of course, there's been a published decision by three bankruptcy court judges as well as a determination by the bankruptcy court that the county was correct on the law. So the decision, no matter what this Court's position on 523-A.5 is, is that a reasonable interpretation would warrant what the county has interpreted, and, therefore, that the decision that the county should not be held in contempt should, in fact, be affirmed, regardless of the Court's rationale. You know, it may be that under the law we should send 12 million people over the wall to Mexico, but, you know, we're not going to do that. And does the county really want to pursue people who are in bankruptcy, who have no money, you know, to get this money back for their children being in custody? Now, I will step back with the father. He did meet with the county. There was a financial determination, and then he was put on a payment plan. And so this was a situation in which... And he's in bankruptcy, then? No, no, no. This was in the state court proceedings. I thought you said the father was now in bankruptcy also. Yes, this was prior to his bankruptcy. Well, that's what I'm saying. In part, he's bankrupt because he had to pay for this money. So he'll go on welfare, then, and then he'll pay for that, or the state will pay or the federal government will pay. Don't you have better things to do in Orange County? I think this is exactly what Congress intended by the law, and I think that's clear in the case law. Also, they intended those 12 million people be deported over the wall. But as the court said in the prior... Because you have a sensible government. Well, we don't have a wall yet, anyway. Your Honors, I think as counsel conceded, the plain meaning of this statute does involve the debts at issue. If you go out on the street, of the four prongs, the only one at issue is the nature of support. If you were to go out on the street here, although this is not the busiest street, and ask someone what kind of obligations do you think are those that are for child support, people would say food, clothing, medical care, things of that nature. Not necessarily when you're voluntarily incarcerated. I mean, if she had the kid at home, she wouldn't necessarily have to pay $23 a day for his food or his medicine. It's kind of a number that's not real. But I would say that Congress could have made that caveat and didn't. It says in the nature of support, including assistance provided by a governmental unit. Now, there's the cases, as we know. There's Spencer, Air Force, Platter, Carlson, Burton that talked about this juvenile context and said if Congress wants to expand the scope of debts to include debts related to the juvenile context, then it could have amended the statute to do so. And it did that. In addition, this Court, Judge Reinhart, was on the panel in the Liebowitz case at 217 F. 3rd, 799, which involved the former 523 A18. And under that paragraph, debts owed under state law to a state or municipality that are, A, in the nature of support and, B, enforceable under Part D of Title IV of the Social Security Act, are deemed nondischargeable debts. So those debts related specifically to debts such as the government's involvement in recovering child support. Now, in its amendments, Congress specifically struck out 523 A18 in its entirety. And now it's owed to a governmental unit, not just recoverable by, but owed directly to, in the nature of support, with no mention that the debt has to be one directly recoverable or enforceable under the Social Security Act. Therefore, it is one simply in the nature of support. So this idea that it has to arise in the context of that limited child support situation is no longer in the legislation. Furthermore, where it used to be debts owed to a spouse, former spouse or child, it now includes debts owed to the government, and not just recoverable by, whereas the logic of it being assigned would apply, but owed to. And the case of Inree Spencer, that's the bankruptcy case that I referenced, 182 BR 263, specifically discusses Section 903 and determines that while it is a statute in the nature of support, this is prior, of course, to the amendments, it said Congress created an anomaly. Under the policy of the discharge, a parent cannot use bankruptcy as a means to dissolve a debt that relates to the support of their child. On the other hand, a fresh start allows them to dissolve their own personal debts. Now, 523A5 created a policy conflict in that it left out governmental units from the equation. That is, someone whose debt is owed to a spouse or someone else would not survive, but bankruptcy otherwise could be used as a means to dissolve a debt under, when it relates to the governmental support of the child, when the governmental unit is at issue. And so specifically in the context of this statute, the Court said the way to resolve this conflict is to amend, have Congress amend the statute such that it relates to debts arising from, or at least that it expands it to include governmental units. And that actually invokes the policy of the Ninth Circuit before this was amended. And again, I would refer to the Lieberwitz case. That was a case in which Orange County was itself the debtor, or sorry, the creditor, and that predated Section 523A5, and that was in 2000. And this Court determined that the County of Orange could collect under 523A5 because the nature of the debtor was not of importance. It was whether the nature of the debt was in the nature of support. And also in Lieberwitz, the Court determined when analyzing whether something is in the nature of support, you don't look to the question of affordability. That involved a father who said, well, I can't pay my child support obligations in the future if you're going to make it so I have to pay this prior debt. And the Ninth Circuit said, no, the question of whether something in the nature of support is whether the basis of the debt benefited the child. Now, Section 903 relates specifically to actual costs incurred by the county for food, food preparation, clothing, personal supplies, and medical expenses. And so that is a debt that arises from the benefit, to the benefit of the child. Now, I acknowledge under the old Section 903, which related broadly to a recovery for care, support, and maintenance, which the California Supreme Court said was overly broad, might not fall within the ambit of 523A5. But Section 903 narrowly tailors it such that those are limited costs, those are limited costs of support. The statutory changes demonstrate that it expanded to be O2, a governmental unit, and eliminated the requirement that it relate to child support debts. The case law, Henry Spencer, Air Force, Flatter, and so on, said, well, why these types of debts no doubt relate to support, and they demonstrate a policy conflict between the overall design of discharge from support debts and 523A5. Congress can step in to do that. And it appears that Congress could do so in this case. Now, as to the idea of even adding legislative history, of course, this Court need not go to legislative history where the language of the statute is plain. I'd submit that if Congress said, hey, all federal courthouses had to be painted green and there was zero legislative history, you might say, well, that's a ridiculous statute. But it doesn't mean you can say, well, I don't know why they did it. They did it, and we would have to follow it. You're not required to collect this. I mean, Orange County doesn't have to pursue everybody. You have a right to it. Well, in this case, there is a state court judgment saying she's obligated to pay. She has not undertaken any attempt that I know of to revisit her state court remedies. And that goes to the question, Your Honor, Judge Wardlaw had mentioned about who decides. Where is she going to get the money to do all these things? I mean, she happens to have a law firm here that's interested in testing a legal principle, but they don't know anything about what she's going to do in state court. And you say, well, what she ought to do is go to state court and fight another legal battle over this now. Well, she doesn't even have the money to pay you. It's just going to – all I was asking is whether you are compelled to pursue people like this or are you given a right to do it? I think the fact, again, that it has been a determination under a state court order that she is obligated to pay, that those debts then are – Do you have the discretion to enforce that order or not enforce that order? Do you entirely have that discretion? I – I mean, or whoever your supervisor or whoever you're working for. I don't know who the manager is or – who would this be? They had probation. There has to be some that they just say it's not worth it to pursue. I – Tutorial discretion. I don't have all those rules in front of me, so I'm not going to – It's not really a rule. It's just a judgment on behalf – judgment on the part of people who enforce these kinds of collection orders. Whether that may or may not be – this also is an issue that repeatedly does visit itself, and although the amounts may be small in this case, we do have – I mean, there is a clear – But you're saying the principle is really important to you too? Yes. Okay. Okay. That's all you had to say. Okay. I see that my time is up. If there are any questions – Thank you. Thank you. Orange County is not compelled to go after Ms. Rivera for this debt. What Orange County is trying to do is use the bankruptcy code and stretch the bankruptcy code as far as humanly possible under their reading of the statutes so that it can pursue the debt. And to stretch the bankruptcy code that far is not what the statute intended, and it's not what – as we articulated before, it wasn't the thrust and it wasn't the purpose, and it's not the overarching goal of protecting domestic support obligations in a bankruptcy case. So just to reiterate the point that I made earlier is Ms. Rivera is not asking the court to make a radical decision here. Ms. Rivera is simply asking the court to interpret the statute consistently with all of the other pre-2005 case law that said these obligations are dischargeable in bankruptcy, and to reaffirm that those amendments didn't have the expansive effect of what Orange County claims that they do and give Orange County the ability to pursue debts as small as $3,000 against people who don't have the ability to pay the debts post-discharge. Should we reach the legislative history, and is there anything in the legislative history that helps you? Your Honor, we should view the statute in the context of the whole. And so if that means looking to legislative history, yes. And Ms. Rivera's – and what Ms. Rivera would submit on that point is that the legislative history is explicitly silent on this issue, interestingly silent on this issue. This court has said before that if there were some drastic change made to a statute, and this would be one of those drastic changes, if the court were to adhere to Orange County's reasoning, it would be a drastic change, there would at least be some mention somewhere in the legislative history. There is no evidence to show that these changes were meant to encompass what Orange County wants them to encompass. There's no mention in the legislative history, no mention in the congressional record, nothing. May I just ask you one other question? So in the new definition of domestic support obligation, it has to be owed to recover by, and it has those two things. And then it says, in the nature of alimony maintenance or support, parentheses, including assistance provided by a governmental unit. What other types of assistance provided by a governmental unit would become a debt owed by the bankruptcy petitioner? What actually could that word assistance mean? Your Honor, it's my understanding that that assistance arises in the welfare context when they're seeking, when a custodial parent is seeking assistance to support a child through another government program, like a welfare program or a women infinite children program. When you get welfare, when someone gets welfare or gets benefits through the other program or food stamps or something like that, are they obligated to pay that back? I do not know the answer to that question, Your Honor. I wanted to thank you and your firm for your pro bono representation. I thought you wrote a superb brief. You may win, you may lose, but we really appreciate the effort. Thank you, Your Honor. We really appreciate that, and we appreciate the opportunity to be in front of the panel today. Well, thank you. Thank you. Thank you very much. The case just argued will be submitted. The court will stand in recess for the day. All rise.
judges: Reinhardt, Wardlaw, Bennett